## Marcu et ux., Appellants, v. Gottlieb.

Argued December 3, 1930. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Ruby R. Vale,* with him *Abraham Marcu* and *Edward Marcu,* for appellants.—The charge of the trial judge was replete with remarks and comments which tended to discredit plaintiffs' testimony and that of their witnesses, and which tended to belittle plaintiffs' case, to justify defendant's defense, rather than a calm, im-

partial summation of the case and the law applicable thereto.

A charge which tends thus to belittle and discredit one party's case is error: Mellor v. Smyth, 220 Pa. 169; Burke v. Maxwell, 81 Pa. 139; Weiss v. Trust Co., 280 Pa. 325; Cross v. M. & M. Co., 121 Pa. 387; Lingle v. Ry., 214 Pa. 500.

*A. L. Levi*, of *Levi & Mandel*, for appellee.—The comments, rulings and charge of the learned trial judge do not disclose reversible error: Makin v. Patterson, 270 Pa. 107; Lee v. Williams, 30 Pa. Superior Ct. 349; McFeaters v. Pattison, 188 Pa. 270; Herstine v. R. R., 151 Pa. 244; Rochester First Nat. Bank v. Fry, 294 Pa. 425.

OPINION BY MR. CHIEF JUSTICE FRAZER, January 26, 1931:

Plaintiffs sued to recover for injuries Mrs. Marcu sustained, and for property damage to Marcu's automobile, when struck at a street intersection by a motor truck driven by Jenkins, defendant's employee. A verdict was rendered for defendant, plaintiffs' motion for a new trial refused, and plaintiffs appealed.

Briefly, the facts are as follows: On November 9, 1928, Mrs. Marcu was driving her husband's car south on Tenth Street in the City of Philadelphia. She had practically crossed the intersection of Tenth and Lombard Streets when a truck driven by defendant's employee, traveling east on Lombard Street, turned south into Tenth Street and came into collision with the right center of plaintiff's car. Mrs. Marcu received injury and the car was badly damaged. Jenkins was arrested, and Gottlieb having refused to compensate plaintiffs for the injury and damage sustained, this action was instituted.

At the trial defendant resisted liability, alleging that, at the time of the accident, Jenkins, by deviation from his line of duty, had taken himself outside the scope of

his employment, and consequently, the relation of master and servant being suspended, Gottlieb was not liable.

The principal questions raised on this appeal are, first, the adequacy of the court's charge on the resumption of an errand by a servant after a deviation and its consequent legal effect; and, second, the fairness, in the interest of an impartial hearing of plaintiffs' cause, of references made by the trial court to witnesses and at various points in the charge concerning the questions involved, all made during the trial and in the hearing of the jury. With merely an expression of doubt as to the completeness of the charge upon the matter of resumption after deviation, we pass it without discussion, for the record shows, as to the second matter complained of, a pressing trial error calling for comment by this court and for the granting of a new trial. A considerable number of the references and remarks made by the trial judge, which are complained of, were without doubt prejudicial to plaintiffs' case. The most flagrant examples follow: In the course of questioning Mrs. Marcu, who had testified she looked three times before crossing the intersection, the trial judge concluded with the highly prejudicial inquiry, "Did you stop those three times, or aren't you saying that because your husband is a lawyer and told you to say that to make out a perfect case?" In the cross-examination of Marcu, who testified he procured a statement from Jenkins at the time the latter was in custody in the station house, the court assailed him with the reproach, "You got that statement from a man who was behind the bars? What kind of a way was that? That is reprehensible." Upon Marcu attempting to explain the circumstance and right himself in the eyes of the jury, the trial judge summarily stopped him and forbade explanation. While defendant was undergoing cross-examination he was handed the affidavit of defense and counsel for plaintiffs asked the important question: "Did you read it before you signed it?" Immediately, the trial judge, without permitting

an answer, summarily informed counsel: "He took his lawyer's word for it. Go ahead with the case." After it had been established that the actual owner of the truck was one Lipitz, a relative of defendant, plaintiffs' counsel inquired of this owner: "On the morning of November 9th, was it [the truck] being used by you? A. No. Q. By Mr. Gottlieb? A. Yes." Although these questions appear to have been proper in testing the credibility of Lipitz, the trial judge, in a remark immediately following this questioning, indicated to the jury that the matter was unimportant and it was strictly wrong on part of plaintiff to introduce it. A quotation from the record follows: "The Court: He said that he loaned it to his brother-in-law. That has nothing to do with this case. I do not know why you put it in. Mr. Marcu: I believe it has a good bit to do with the case and I ask for an exception to your honor's remark. The Court: It has nothing to do with this point." Then follows what appears to be an argument between the court and counsel in the hearing of the jury, which could well have given it the unfavorable impression that plaintiffs' request for an exception and the withdrawal of a juror were out of order. The court did not, as is the practice, simply make rulings; it defended by argument its own view. In his charge, the trial judge made the following highly colorful comment upon Jenkins' arrest following the accident: "He was arrested under some regulation of the police department which I sometimes think is a very foolish one, because they, without discrimination, arrest anybody who is in an accident without inquiring as to the real fault in the matter"; and, further, referred to the testimony of Mrs. Marcu as "glib." His entire presentation of the case to the jury is colored by a similar tone deprecatory to plaintiffs, one of whom was always referred to in his charge as "plaintiff lawyer." For a trial judge deliberately to take sides in a controversy and by his remarks and general manner to discredit a suitor's case in the eyes of the

jury, especially when nothing appears in the testimony to warrant such procedure, should not be acquiesced in by this court.

We consider discussion unnecessary of the numerous complaints concerning instructions by the trial judge applicable to the chauffeur's deviation from and resumption of his errand when sent on a mission by his employer. The judgment of the lower court should be reversed because of the attitude of the trial judge and a new trial granted.

The judgment is reversed with a venire facias de novo.